UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
WILMA ROMAN,                                        :
                                                    :
                      Plaintiff,     :      <u>OPINION & ORDER</u>
                                                    :
       - against -                              :      05 Civ. 2846 (HB)
                                                    :
CLAY-PARK LABS, INC. and JUAN CACERES,              :
                                                    :
                 Defendants.                      :
------------------------------------------------------------------------x
WILMA ROMAN,                                        :
                                                    :
                      Plaintiff,     :
                                                    :      05 Civ. 4068 (HB)
       - against -                              :
                                                    :
LOCAL 210 INTERNATIONAL BROTHERHOOD                 :
OF TEAMSTERS and NELSON NUNEZ                       :
                 Defendants.                      :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      On February 22, 2005, *pro se* plaintiff, Wilma Roman ("Roman" or "Plaintiff"), filed a complaint against her employer, Clay-Park Labs, Inc. ("Clay-Park" or "Company"), and her former manager, Juan Caceres ("Caceres"), alleging discrimination in employment on the basis of national origin as well as retaliation in their failure to rehire her. That same day, Roman filed a second complaint against her union, Local 210 International Brotherhood of Teamsters ("Local 210"), and her former union representative, Nelson Nunez ("Nunez"), that alleged discrimination in employment due to their failure to fairly represent her when she was terminated. Plaintiff claims that she was fired because she did not speak English and further, was not rehired by Clay-Park in retaliation for the Equal Employment Opportunity Commission ("EEOC") complaint she filed against the Company. I accepted these cases as related on April 22, 2005 and they were tried together. A two-day bench trial was held on March 27 and March 28, 2006 and post-trial findings of fact and law were received from all parties on April 27, 2006.

                                 **I.     FINDINGS OF FACT**

      In June 2002, Roman was hired as a line worker at Clay-Park Labs, a manufacturer of pharmaceutical products. Clay-Park has a predominately Hispanic workforce and Plaintiff is

also of Puerto Rican descent. Roman worked in Department 309 ("Department") and was responsible for packaging Clay-Park products. Employees in this Department are governed by a collective bargaining agreement.

*A. Termination from Clay-Park*

In February 2003, Juan Caceres, manager of Department 309, was directed by Company management to layoff the least senior person in that Department. Juan Caceres Affidavit ("Caceres Aff.") ¶ 5. Thus, on February 28, 2003, after approximately nine months at Clay-Park, Caceres informed the plaintiff that due to a company-wide workforce reduction, the company was required to let her go, effective Monday, March 3, 2003. See Def. Ex. F, Termination Report. Further, plaintiff says she learned that she was being fired because she did not speak English and that an even more junior employee, Gisell Valencia ("Valencia"), who was English speaking, would remain. See Roman Testimony, Trial Tr. 49: 2-4. Plaintiff was not terminated for cause.

Roman argued that because she was not the least senior employee in the department, she should not be let go. Roman Testimony, Trial Tr. 46: 19-23. Valencia was hired as a line worker in Department 309 in July 2002, a couple of weeks after the plaintiff. Valencia Testimony, Trial Tr. 115:3, See also Roman Testimony, 47:6-9 ("She arrived there approximately two weeks after I did."). Caceres testified that Valencia, who is bilingual, was off the production line and thus, not the least senior line person in the Department. Valencia was now a trainer and secretary.

The timeline associated with Valencia's promotion to trainer/secretary at Clay-Park was unclear prior to trial and still remains murky. Valencia herself could not pinpoint, with any degree of certainty, when she left the line. She testified at one point on direct that she left her duties as line person both at the start as well as at the end of 2002.

> The Court: So you left the line job when?
> The Witness: When he [manager] started training me for [the] secretary position.
> The Court: Could you tell us when that was? What month? What year?
> The Witness: It was in 2002, going on 2003.
> The Court: It was the end of 2002?
> The Witness: The time period is not too clear but I'm thinking between [sic] March.

>The Court:  Of what year?
>
>The Witness:  2002, if I'm not mistaken.

Valencia Testimony, Trial Tr. 119: 15 – 120:2.  Later on, she states that she left the line at the end of 2003.  Valencia Testimony, Trial Tr. 134:8-15.

However, it was undisputed that all Clay-Park trainers must be bilingual and that Valencia had that capability.  These individuals are responsible for training their fellow employees on Clay-Park's standard operating procedures ("SOPs"), which are spelled out in a guidebook, written in English.  See Valencia Testimony, Trial Tr.123: 4-13; See also Caceres Testimony, Trial Tr. 156: 11-18; Torres Testimony, Trial Tr. 190:19 – 191:1.  Clay-Park relies on the trainers to translate the procedures from English to Spanish and convey that information in training sessions to their majority Spanish-speaking workforce.  Roman is not bilingual while Valencia is.

*B. Interaction with Local 210*

In an attempt to get her job back, Roman contacted her Local 210 union representative, Nelson Nunez.  On March 3, 2003, the Monday following her termination, Roman had a meeting with Nunez where she explained that she was wrongfully terminated because there was a more junior employee in the Department.  In the presence of Roman, Nunez contacted Caceres, Plaintiff's former manager.  Caceres conveyed that the more junior employee was bilingual, thus she was kept so that she could be used as a trainer.  As a result of this conversation, Nunez concluded that pursuant to the collective bargaining agreement, Clay-Park was within their rights to lay off Roman.  The collective bargaining agreement permits the employer to layoff employees both on the basis of seniority as well as ability to perform a job.  Plaintiff requested that he file a grievance on her behalf.  Nunez refused.

In or around August 2004, plaintiff contacted Pedro Cabezas, President of Local 210, and also told him that she was wrongfully terminated from her position at Clay-Park because she was not the most junior employee in the Department.  Cabezas followed up with Nunez (who was no longer employed at the Local 210) about the details of Roman's case.  When Nunez confirmed that the Company did not do anything wrong in this case, Cabezas called Roman back and told her there was nothing the union could do for her now.

*C. Discrimination Complaints Filed*

On March 10, 2003, Roman filed a discrimination charge with the National Labor

Relations Board ("NLRB") against her union, Local 210, because Local 210 failed to file a grievance on her behalf. The NLRB did not issue a complaint against Local 210 and on May 21, 2003, the NLRB concluded that further proceedings were not warranted in this case. The NLRB rejected Roman's attempts to appeal their decision as untimely. Def. Ex. N.

However, with regard to Clay-Park, Roman filed an EEOC Complaint against them on November 24, 2003, in which she alleged that she was fired because she did not speak English and was not rehired as a result of discrimination directed at her. Def. Ex. H. She also alleged that the union's failure to represent her was bottomed in discrimination. Id. The record is barren on the result of any such EEOC complaint. Regardless, Roman filed a second EEOC Complaint on October 14, 2004 that alleged that Clay-Park's failure to rehire her was in retaliation for filing the initial EEOC charge. Def. Ex. I. Here the record provides information that the EEOC issued a right-to-sue letter dated November 22, 2005. Def. Ex. J.

*D. Plaintiff's Attempts at Rehire*

During this process, Plaintiff continued to contact both Clay-Park and Local 210 officials about the possibility of being rehired. In or about July or August 2003, plaintiff contacted Caceres about the possibility of working at Clay-Park again, if a position became open. Caceres Aff. ¶ 9; See also Caceres Testimony, Trial Tr. 163: 18-22. Roman also called Nunez, her union representative and sent him a letter that Roman claims was another request by her to be rehired at Clay-Park. Plaintiff has a certified receipt that indicates that the union received this letter on August 8, 2004. Pl. Ex. 1. There is no way to verify the content of the letter since the plaintiff failed to keep a copy and the defendants appear to have lost it. But Roman followed the letter with a phone call where she spoke to Cabezas, President of the Local 210, about the possibility of being rehired because Clay-Park was instituting a night shift. Cabezas Testimony, Trial Tr. 235: 2-10. Plaintiff even called Frank Quintiliani, Clay-Park Director of Human Resources, about the possibility of a job but was unable to speak to him because he does not speak Spanish and a translator was not available.

Quintiliani, however, testified that an application and resume are prerequisites for anyone that seeks employment at the company.

> Q: So is it correct that there's two prerequisites, a job application and a resume?
>
> A: Resume is first.
> . . .

> The Court:  Is that true for people who have already been employed and whose resume you have on file?
>
> The Witness:  That is true, yes.

Quintiliani, Trial Tr. 138:4-6; 137:12-15.  It is undisputed that at no time did Roman submit a resume and application to reapply for a job at Clay-Park.  Roman testified as follows.

> Q:  Did you ever, after you were laid off, if you wanted a job, did you ever send a resume?
>
> . . .
>
> A: Where?
>
> Q: To Clay Park.
>
> A: No.

Roman Testimony, Trial Tr. 81:2-8; See also Quintiliani Testimony, Trial Tr. 139:13-15 (stating that Roman never submitted an application or a resume after she was fired).  The collective bargaining agreement has no provision that rehiring must be done in the same order as those that are let go.

Clay-Park argues that Caceres, Plaintiff's manager, recommended at the time of termination that Roman should not be rehired in the future.  However, at the time Caceres fired Roman, he provided Roman with a termination report that did not indicate, one way or the other, that Roman's job performance was unsatisfactory or that he would not recommend her for rehire in the future.  Caceres Testimony, Trial Tr. 170: 18-23.  But on the termination report Caceres provided to company management and the one submitted by Defendants at trial, Caceres noted that he would not recommend Roman for rehire in the future.  Def. Ex. F.  Caceres testified that he made the recommendation not to rehire, and filled out the corresponding termination report, right after he fired Roman.

Following plaintiff's termination, Clay-Park did not fill any vacancies in Department 309 until early 2004.

E.  *Retaliation Claim*

Plaintiff's retaliation claim hinges on an alleged conversation denied by both participants.  Plaintiff alleges Cabezas and Quintiliani were involved in a conversation where Quintiliani said Roman would not be rehired because she filed an EEOC complaint.  In fact, Cabezas testified

5

that he has never even spoken to Quintiliani.

> Q:  Did you ever say words to Ms. Roman to the effect that you spoke to Frank [Quintiliani, Clay Park Human Resources Director] . . . ?
>
> A:  No, I was trying to recollect and look back, Mr. Sturm, and I don't think I even knew Frank at that time.  It wasn't my shop and they never had a human resource person there so I wouldn't have known.
>
> The Court:  So you had no conversation with Frank, the human resource director, ever?
>
> The Witness: No, because I didn't know him . . .

Cabezas Testimony, Trial Tr. 239: 9-17.  And Quintiliani testified in a similar manner.

> Q:  First of all, did you ever have a conversation with Mr. Cabezas about Ms. Roman?
>
> A:  No – about what?
>
> Q: About her [Roman] employment?
>
> A:  No.
>
> Q:  Did you ever have a conversation with him in which you mentioned an EEOC file?
>
> A: Never.
>
> Q:  Did you ever have a conversation with him about taking her back?
>
> A: Never.

Quintiliani Testimony, Trial Tr. 139:22 – 140:7.  Roman presented no other evidence besides her own testimony.  See Roman Testimony, Trial Tr. 106:14-16.  This is not enough to tip the scales in her favor and support her claim that she was not rehired in retaliation for filing an EEOC complaint.

Plaintiff moved back to Puerto Rico in 2005 with her two children and she, and her two children, continue to live there.

## II.     CONCLUSIONS OF LAW

As a preliminary matter, both sides argue that plaintiff's complaints are untimely.  Pursuant to 42 U.S.C. § 2000e-5(F)(1), individuals are permitted to file suit 90 days after receipt

6

of a right-to-sue letter from the EEOC. Federal Rules of Civil Procedure Rule 6(e) provides that for documents that are served by mail and require a response, an additional three days is added to the prescribed response period. See FED. R. CIV. P. 6(E). In this case, both defendants argue that the plaintiff filed her complaint after the statutorily proscribed 90 day window, and thus, the case must be dismissed. Plaintiff's right-to-sue letter was dated November 22, 2005. The FRCP 6(e) presumption leads to a determination that the plaintiff received the right-to-sue letter on November 25, 2005.[1] Given plaintiff's complaint was dated February 22, 2005, the complaint was timely filed.

Further, the 90 day time statute is subject to waiver, estoppel, or equitable tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Plaintiff's limited proficiency in English presents a persuasive case for equitable tolling, especially since all documents were provided to her in English.

*A. Retaliation*

Plaintiff contends that defendants retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3[2] when they failed to rehire her. To establish a claim, the plaintiff must allege the prongs necessary to prove a prima facie case. They include: 1) that plaintiff engaged in a protected activity known to the defendant, 2) suffered an adverse employment action, and 3) there exists a causal connection between the protected activity and the adverse employment action. See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000).

Besides the double hearsay statement, denied by both parties to the alleged conversation, plaintiff provides no evidence to demonstrate that she was not rehired as the result of her filing an EEOC complaint in either May 21, 2003 or November 24, 2004. Clay-Park was under no obligation to rehire the plaintiff simply because a position became available. In fact, it does not even appear that plaintiff went through the correct channels to reapply for a job at Clay Park. For all of the reasons above, I find that plaintiff did not satisfy her burden as to this claim.

*B. Other Claims*

As noted above, in the November 24, 2003 EEOC complaint filed by the Plaintiff, she

---

[1] Plaintiff noted in her complaint that she received the right-to-sue letter on November 22, 2005. However, I find this to be improbable as the letter was dated November 22, 2005.
[2] This section makes it illegal for an employer to discriminate against an employee based on participation in any Title VII enforcement or investigation action.

alleged, in part, that she was fired because she did not speak English and the union failed to represent her due to discrimination. These two claims were not raised in Plaintiff's second EEOC Complaint filed on October 14, 2004. The record does not indicate that a right-to-sue letter was issued in response to the November 24, 2003 complaint. Nonetheless, I address these issues too.

*1. Wrongful Termination*

To sustain a claim for wrongful termination, plaintiff must first establish a prima facie case of employment discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff sets forth a prima facie case, the burden of going forward shifts to the employer to "articulate some legitimate, non-discriminatory reason for the employer's rejection." Id. If the employer is able to do so, then the plaintiff must show that the stated reason is pretextual. Id. While plaintiff here sets forth a prima facie case, she failed to show that Clay-Park's reason for firing her was pretextual.

To establish a prima facie case of discrimination, plaintiff must show that she 1) is a member of a protected class, 2) was qualified for the position held, 3) suffered an adverse employment action, and 4) the surrounding circumstances gave rise to an inference of discrimination. Id. Plaintiff satisfies the burden here.

Plaintiff, a Puerto Rican woman, is a member of a protected class and clearly suffered an adverse employment action when she was fired on February 23, 2003. See Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (providing that an adverse employment action may include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand."). Although the defendants characterized Roman as a disruptive employee, her supervisor, Ingrid Torres, reports, and the record indicates, that Roman was qualified for her position and performed her job duties satisfactorily. Torres testified as follows.

> The Court: You evaluate her – did she do a good job for you?
>
> The Witness: Yeah. She was decent worker, yeah. She was good.

Torres Testimony, Trial Tr. 196:3-6. And, most importantly, since her manager, Caceres, informed her that she was being fired because she did not speak English and was the most junior employee in the Department – even when it was undisputed that another employee was hired two weeks after she was – the circumstances suggested that Clay-Park may have had a discriminatory motive when they fired Plaintiff in February 2003.

8

Clay-Park responds that the company was undergoing a company-wide workforce reduction. Courts have found that this is a legitimate, non-discriminatory reason. See Seltzer v. Dresdner Kleinwort Wasserstein, Inc., 356 F.Supp.2d 288, 297 (S.D.N.Y. 2005). Further, Clay Park argues that although Valencia was hired after the plaintiff, she was bilingual, and thus, possessed a required skill to perform another job. Court have also found that requiring language proficiency for a job that involves language skills is a permissible, non-discriminatory reason for choosing one employee over the other. See De La Cruz v. New York City Human Resources Admin. Dep't of Social Servs., 82 F.3d 16, 22 (2d Cir. 1996).

Plaintiff argues this reason is pretextual because English was not required to perform her job. In fact, a significant number of Clay-Park's employees, including those in plaintiff's Department, only spoke Spanish.

However, the collective bargaining agreement, which applied to the plaintiff, dictates that layoffs shall be based on both seniority and ability to do the work.

> Seniority shall be applied in cases of layoffs and rehirings. Seniority shall be by departments, and seniority shall be determined based on length of service and ability to perform the work. All employees shall be required to perform the work available. If an employee refuses to perform the work assigned, he shall be subject to discharge.

Court Ex. 1, Collective Bargaining Agreement, ¶ 5. Although defendants' did not establish that the plaintiff was the most junior employee in the Department at the time she was fired, it was uncontested that trainers needed to be both English and Spanish-speaking to do the job. The clear terms of the collective bargaining agreement state that ability is a relevant factor in personnel decisions. In this instance, Roman did not satisfy the language requirement and Valencia did. Put another way, it was reasonable for Clay-Park to retain Valencia because they needed a trainer/secretary and the plaintiff could not fulfill that role. Further, the record fails to provide evidence that Clay-Park was motivated in any way by discrimination, especially as Plaintiff herself says a large number of her fellow workers are Hispanic.

In sum, because discrimination laws do not protect individuals from what may appear to be unjust actions of their employers, just illegal ones, I cannot find that Clay-Park discriminated against the plaintiff when they fired her in February 2003.

2. *Failure to Represent*

Plaintiff alleges that, pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-

9

2(c), Local 210 breached its duty of fair representation when they discriminated against her and failed to file a grievance on her behalf. To establish a prima facie case, the plaintiff must show that: 1) the employer violated the collective bargaining agreement with respect to the plaintiff, 2) the union did not act to correct the violation, and thus breached their duty of fair representation, and 3) the union's failure to act was motivated by discrimination. Carion v. Local 32B-32J, SEIU, 2005 U.S. Dist. Lexis 4417, *22 (S.D.N.Y. 2005) (internal citation omitted). The plaintiff must demonstrate that the union's conduct was either arbitrary, invidiously discriminatory, or in bad faith and that the union's conduct caused her injuries to demonstrate breach of duty. This is a heavy burden to meet and the Plaintiff does not satisfy the burden here. See Cruz v. Local Union No. 3 of the Int'l Brotherhood of Electrical Workers, 34 F.3d 1148 (2d Cir. 1994) (holding that the duty of fair representation is not breached when the union fails to process a meritless grievance, engages in mere negligence conduct, or fails to process a grievance due to an error in evaluating the merits of the grievance).

Plaintiff was a dues-paying member of Local 210 and thus owed a duty of fair representation. However, at trial, plaintiff presented no evidence that demonstrates Local 210 acted either arbitrarily, discriminatorily, or in bad faith when they failed to file a grievance against Clay-Park. In fact, the plaintiff failed to demonstrate that Clay-Park violated the collective bargaining agreement in anyway, triggering the Union's duty to act.

Further, the union responded to plaintiff's complaint, albeit not to Plaintiff's satisfaction. But the duty of fair representation does not require member satisfaction with the union's representation at all times. The Plaintiff does not deny that union representative, Nelson Nunez, contacted her supervisor, Caceres, to inquire about the circumstances surrounding her termination. The Supreme Court has stated that a union can not "arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion," but the Plaintiff has not demonstrated that this is the case here. Vaca v. Sipes, 286 U.S. 171, 191 (1967). Thus, her breach of fair representation claim against Local 210 must fail.

### III. CONCLUSION

For the reasons above, the complaints are dismissed with prejudice as to both defendants. The Clerk of the Court is instructed to close this matter and remove it from my docket.

**IT IS SO ORDERED.**

**New York, New York**
**June 2, 2006**

_____
U.S.D.J.